UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT S. RYCROFT,

                Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

Case No. 17-0654-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

For the reasons set forth below, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to provide specific, clear, and convincing reasons for finding plaintiff's subjective symptom testimony was not fully supported. The ALJ's error is therefore harmful. The Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On September 11, 2013, plaintiff filed an application for disability insurance benefits alleging that he became disabled beginning September 8, 2010. Dkt. 8, Administrative Record

ORDER - 1

(AR) 182-192. Mr. Rycroft had craniotomy surgery for bleeding on his brain in September of 2010, and later had heart surgery in April of 2011, to repair an aortic valve, aortic root, and ascending thoracic aorta. AR 330-332, 368-372, 445-447, 450-456, 567-568. His Social Security benefits application was denied on initial administrative review. *Id.* at 232. At the time he applied for benefits, Mr. Rycroft was living in Michigan; Michigan does not have a reconsideration level of review. *See id.;* https://secure.ssa.gov/poms.nsf/lnx/0412015100. A hearing was held before an ALJ at which plaintiff appeared and testified as did a vocational expert. AR 42-67.

In a written decision dated April 21, 2015, the ALJ documented his analysis at each of the five steps. AR 25-41. Steps one, two and three were resolved in plaintiff's favor; the ALJ considered plaintiff's residual functional capacity and found at step four that plaintiff could not perform his past relevant work (AR 35); but the ALJ found at step five that Mr. Rycroft could perform jobs that exist in significant numbers in the national economy (AR 36-37) and therefore, he was not disabled. AR 25-41. Plaintiff's request for review was denied by the Appeals Council on July 14, 2016, making the ALJ's decision the final decision of the Commissioner, which plaintiff then appealed in a complaint filed with this Court on April 26, 2017. AR 9; Dkt. 1; 20 C.F.R. § 404.981.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, arguing the ALJ erred: (1) in evaluating the medical opinion evidence from Geoffrey Trivax, M.D., Jack Belen, M.D., and Donald Kuiper, M.D.; and (2) in discounting plaintiff's credibility. For the reasons set forth below, the Court finds that the ALJ erred in certain respects concerning the medical evidence, and also erred in discounting plaintiff's credibility. The Court also finds that there is ambiguity in the record concerning Mr. Rycroft's medical situation and disability

ORDER - 2

status for a 12-month period between the date of onset and the ALJ's decision; therefore the decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v.*

ORDER - 3

*Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

## I. The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff asserts the ALJ failed to properly consider the opinion evidence submitted by treating physician Dr. Trivax, examining physician Dr. Belen, and non-examining physician Dr. Kuiper. Dkt. 10 at 4-5. He argues that Dr. Trivax's opinion should have been given greater weight by the ALJ, specifically that the ALJ overlooked Dr. Trivax's opinion that the plaintiff was only capable of light work due to medical evidence of fatigue.

Medical opinions provided by professionals in Social Security cases often may be categorized into three groups: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." *Lester,* 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson,* 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of*

ORDER - 4

*Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (*citing Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)). As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).

    a. <u>Dr. Trivax</u>

Plaintiff contends the ALJ erred by failing to properly consider treating physician Dr. Trivax's opinion that plaintiff could perform light work. Dkt. 10 at 4. Dr. Trivax was plaintiff's primary care provider; he examined plaintiff in 2012 and 2013, following plaintiff's aortic valve replacement. AR 416-570. On October 17, 2012, Dr. Trivax submitted a letter opining plaintiff : "had a hemorrhagic stroke and heart attack in September 2010. He continues to have difficulties with mentation and physical weakness. He is permanently disabled." AR 545. The record contains objective medical evidence concerning fatigue, leading up to Dr. Trivax' opinion in October 2012. The evidence shows that at some of his medical appointments during 2010-2012

ORDER - 5

with Dr. Trivax, Dr. Deeb, Dr. Haft, Dr. Zughaib, and in a Social Work Psychosocial Assessment in November of 2010, there are notations concerning fatigue – sometimes noted in earlier date ranges as severe, at times described as mild, and in later date ranges during 2011 and 2012, described as having been resolved. AR 305-306, 321, 328, 363-364, 369-372, 388, 392-394, 396-398, 404, 440, 455-456. Regarding plaintiff's functional limitations, on March 21, 2013,[1] Dr. Trivax opined that Mr. Rycroft was prevented from working due to symptoms from aortic valve surgery, and because of fatigue he was limited to "[n]o lifting greater than 40 lbs." AR 531. Dr. Trivax also checked the box indicating that plaintiff had "slight limitation" in functions. AR 531. Dr. Trivax opined plaintiff could do "light work," defined as "lift[ing] a maximum of 25 lbs. with frequent lifting and/or carrying of objects at least 10 lbs." *Id.*

The ALJ discussed Dr. Trivax's 2012 and 2013 opinions and afforded some weight to the 2013 opinion, and less weight to the 2012 opinion. AR. 34. With respect to Dr. Trivax's 2012 opinion that plaintiff was "permanently disabled," the ALJ found that this opinion was contravened by the treatment record from March 21, 2013, that plaintiff could do light work and lift up to 40 pounds, as well as a clinic note from June 2012, that plaintiff's echocardiogram was negative and that plaintiff was "doing well from the cardiorespiratory point of view." *Id.*

The Court finds that the ALJ properly questioned Dr. Trivax's October 2012 opinion that plaintiff was "permanently disabled," by noting it was contradicted by Dr. Trivax's June 2012 opinion that plaintiff was doing well, and his later 2013 opinion that plaintiff could do light work. *See* AR 34. An ALJ need not accept the opinion of a treating physician if it is inadequately supported by the record as a whole. *Batson,* 359 F.3d at 1195. Determining whether

---

[1] The ALJ refers to the March 21, 2013 statement as dated July 13, 2013. AR 34. This appears to be a typographical error. The progress statement report states a date of July 13, 2013 as the next scheduled visit, and the signed date on the statement appears to be March 21, 2013. AR 531-532.

ORDER - 6

inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)).

Therefore, the Court finds that the ALJ properly discounted Dr. Trivax's October 2012 opinion, as it relates to the medical evidence from October 2012 going forward. However, the medical evidence must be considered as a whole. The record also contains objective medical evidence relating to various degrees of fatigue and weakness between September 8, 2010 and October 2012, when Dr. Trivax rendered his opinion concerning Mr. Rycroft's weakness relating to his medical condition. The ALJ did not develop the record with respect to determining whether a 12-month continuous period of disability occurred during the time period between date of onset and October 2012.

The Court notes that a claimant is considered disabled if the symptoms that amount to a disability (under the Social Security statutes and regulations) persist and prevent the claimant from working for at least one year. *Barnhart v. Walton,* 535 U.S. 212, 217-225 (2002). Mr. Rycroft's alleged disability onset date is September 8, 2010; the medical evidence as a whole shows that his symptoms first occurred in September 8, 2010 when he suffered a stroke and that he continued to experience symptoms during post-operative rehabilitation after his heart surgery in April of 2011. Although the Court does not make a finding as to severity or improvement of symptoms, or (if improvement occurred) any specific date that Mr. Rycroft's symptoms began to improve, or whether those symptoms show that he was or was not disabled under the Social Security Act statutes and regulations – as discussed below it is important for the ALJ to consider all evidence in the record to determine whether Mr. Rycroft is entitled to benefits for some

ORDER - 7

period of time [if the evidence supports a minimum 12-month time period of disability] based on symptoms that began at the date of onset in September of 2010. *See generally, Bastien v. Califano,* 572 F.2d 908 (2nd Cir. 1978); *Cutter v. Colvin,* 673 Fed. Appx. 78 (2nd Cir. 2016) (the plaintiff is not required to prove that his or her disability lasted for the entire period of time in which the case is an open matter for litigation; rather, if claimant proves that he or she is continuously disabled for a portion of time, consisting of at least a 12-month period, that is within the entire litigation time span beginning with the date of onset and ending with the final determination of the Social Security Administration, then the plaintiff has met his or her burden of proof for purposes of that specific portion of the total time span in which he or she has proved continuous disability lasting 12 months or more).

With respect to Dr. Trivax's March 2013 opinion, the ALJ found that Dr. Trivax's opinion that plaintiff could lift up to 40 pounds was inconsistent with his finding that plaintiff could only perform light work, lifting a maximum of 25 pounds occasionally and 10 pounds frequently. AR 34. The ALJ reasoned that the lifting limitation of 40 pounds is above the requirement for light work. *Id.* The ALJ cited the longitudinal treatment record and results from two normal echocardiograms in January 2014 and February 2015 as a basis for his decision. *Id.*

Although plaintiff contends that Dr. Trivax is the only physician to address plaintiff's fatigue, and thus, his opinion should have been afforded more weight, Dr. Belen adequately addressed the issue. In plaintiff's exam with Dr. Belen, plaintiff reported that he would get fatigued easily. AR 578. Nevertheless, Dr. Belen assessed that plaintiff had a less restrictive RFC because the lifting limitations were not consistent with the lack of weakness on the exam. *See* AR 574-578. In addition, Dr. Kuiper reviewed plaintiff's file and assessed plaintiff as capable of performing medium work. AR 79.

ORDER - 8

In his decision, the ALJ discussed the rather benign results of plaintiff's exam with Dr. Belen and found that the normal results obtained by Dr. Belen were consistent with the treatment record. AR 34. While the ALJ did not specifically discuss the overall evidence in the medical records related to plaintiff's fatigue, the Court concludes that there is substantial evidence in the record contradicting the 2013 conclusion of Dr. Trivax and supporting those of Dr. Belen and Dr. Kuiper. As a result, the ALJ had specific and legitimate reasons to rely more heavily on Dr. Belen's and Dr. Kuiper's opinions over the 2013 opinion of Dr. Trivax.

Additionally, the ALJ noted the discrepancy between Dr. Trivax's opinion that plaintiff could lift up to 40 pounds and Dr. Trivax's finding that plaintiff's physical impairment should be categorized as "light work," which constitutes lifting a maximum of 25 pounds. AR 34. The ALJ also cited to the longitudinal record and specifically, the results from two normal echocardiograms in 2014 and 2015. AR 33-34. In discussing the two normal echocardiograms, the ALJ found that the two tests were consistent, and showed that plaintiff's "cardiovascular condition is sustained." AR 34. Although the ALJ does not directly illuminate the inferences to be drawn from an exploration of the two normal echocardiograms considered alongside Dr. Trivax's assessment of plaintiff's ability to carry/lift weight, the ALJ cited other, additional evidence in the record that indicates plaintiff's cardiovascular condition was stable and that plaintiff is more functionally capable than Dr. Trivax found. AR 33-34.

The Court must uphold the ALJ's decision 'if the agency's path may reasonably be discerned.'" *Molina*, 674 F.3d at 1121 (quoting *Alaska Dept. of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)); *see Magallanes*, 881 F.2d at 755 (noting district court may draw "specific and legitimate inferences from the ALJ's opinion"). The Court can do so here, as to the ALJ's concerns about Dr. Trivax's opinion and the record as a whole supports the reasoning of the ALJ

ORDER - 9

as to the time period from October 2012 forward. *See Lester*, 81 F.3d at 834. The Court agrees with the ALJ's finding that evidence undermines Dr. Trivax's opinion regarding plaintiff's inability to do more than light work in March of 2013, and the evidence to the contrary serves as a specific and legitimate reason to discount Dr. Trivax's 2013 opinion.

      b. <u>Drs. Belen and Kuiper</u>

Plaintiff contends the ALJ erred by giving significant weight to the opinions of Jack Belen, M.D., an examining physician, and Donald Kuiper. M.D., a non-examining physician and state-agency consultant. Dkt. 10 at 5. The ALJ found that Dr. Belen's and Dr. Kuiper's opinions were supportive of the RFC finding at "medium" and consistent with the treatment record. AR 34-35.

To discount the opinion of a treating or examining physician in favor of the opinion of a non-examining physician, "the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester*, 81 F.3d at 831). A non-examining physician's opinion may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Dr. Belen opined in November of 2013 that plaintiff had normal stance and stature, symmetric deep tendon reflexes in the extremities, negative straight leg raise bilaterally, normal toe and heel walk, normal tandem gait, "full and pain free range of motion" in the neck and back, and full gripping strength at 5/5. AR 579. During the exam with Dr. Belen, plaintiff stated a lifting limitation of "no more than 50 pounds." *Id.* Dr. Kuiper assessed, in November of 2013, that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, could stand, walk, or sit for six hours in an eight-hour workday. AR 79.

ORDER - 10

In giving Dr. Belen's and Dr. Kuiper's opinions significant weight, the ALJ explained that the record did not support Dr. Trivax's March 2013 opinion that plaintiff was limited to light work. AR 34-35. The ALJ pointed to evidence that Dr. Belen's examination produced objective findings that were not inconsistent with his RFC assessment, including plaintiff's own statement he could not lift more than 50 pounds. AR 34. The ALJ also found that Dr. Kuiper's opinion was consistent with Dr. Belen's findings, AR 35. A non-examining physician's opinion that is based on independent evidence in the record (such as an examining physician's own objective findings) can constitute substantial evidence when that opinion is consistent with other independent evidence in the record. *Lester,* 81 F.3d at 830–31.

Therefore, the ALJ properly relied more heavily on Dr. Belen's November 2013 opinion and Dr. Kuiper's November 2013 opinion, rather than Dr. Trivax's October 2012 and March 2013 opinions, because Dr. Belen's and Dr. Kuiper's assessments were the most consistent with the contemporaneous medical records – as to the time period from October 2012 forward.

## II. Plaintiff's Credibility

Mr. Rycroft argues that the ALJ erred in discounting his credibility; he contends his testimony is consistent with the medical evidence and his ability to perform certain daily activities. Dkt. 10 at 6-7. Plaintiff also contends that the ALJ erroneously implied that plaintiff had secondary gain motivations that prompted plaintiff's failure to return to work. Dkt. 10 at 6.

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination

ORDER - 11

invalid, as long as that determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider prior inconsistent statements concerning symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

    a. <u>Motive</u>

Plaintiff argues the ALJ erred when the ALJ implied that plaintiff had secondary gain motivations that prompted plaintiff's failure to return to work. Dkt. 10 at 6.

At the hearing, plaintiff testified that he was receiving private disability insurance. AR 46. The ALJ asked if plaintiff would lose his private disability insurance if he went back to work, and plaintiff replied, "I imagine so." AR 52. In his decision, the ALJ stated that plaintiff is currently receiving tax-free private disability insurance benefit of $5,900 per month. AR 32. The ALJ stated that during the hearing, plaintiff testified "if he returned to work he would have to give up his private disability insurance benefits (hearing testimony)." *Id.*

It is unclear to what extent the ALJ relied on this alleged motive in making the decision

ORDER - 12

that plaintiff's testimony was not credible. While the ALJ may consider a claimant's motivation and the issue of secondary gain in rejecting his or her symptom testimony, there is little evidence in the record to show plaintiff actually was motivated by secondary gain here. Even if this evidence is interpreted as indicative of such a motive, a single weak example of such evidence would not, standing alone, suffice to support an adverse determination. *Burrell v. Colvin*, 775 F.3d 1133, 1139-40 (9th Cir. 2014). The ALJ may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642 (citing *Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22. A finding that an individual's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds …." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

Other district courts that have addressed the issue have held that "[a] claimant's motive of pecuniary gain [alone in applying for Social Security benefits] is an improper basis on which to determine that subjective complaints are not credible." *Ratto v. Sec'y,* 839 F.Supp. 1415, 1428-29 (D. Or. 1993). *Kish v. Astrue,* 2012 WL 3763634, at *1 (W.D. Wash. Aug. 28, 2012), *rev'd on other grounds Kish v. Colvin,* 552 F. App'x 650 (9th Cir. 2014) ("the mere fact that plaintiff has chosen to pursue an L&I pension is hardly indicative of a lack of motivation on his part, nor does it necessarily constitute evidence of any secondary gain issue without further evidence of actual inappropriate behavior in this regard.").

The ALJ failed to point to substantial evidence suggesting a secondary gain. Thus, although the extent of the ALJ's reliance on this testimony is unclear, the Court concludes that the ALJ's reasoning was not "sufficiently specific to allow a reviewing court to conclude the

ORDER - 13

adjudicator rejected the claimant's testimony on permissible grounds." *See Brown-Hunter,* 806 F.3d at 488-89. Thus, this was not a valid reason to find that plaintiff lacks credibility.

b. Daily activities

Plaintiff also alleges that the ALJ erred when the ALJ found that plaintiff's daily activities were inconsistent with his allegations. Dkt. 10 at 7 (citing AR 32). Plaintiff argues the ALJ failed to explain how plaintiff's reports of doing loads of laundry and light housework with rest breaks were inconsistent with his allegations that his fatigue prevented him from sustaining work activity on a regular and continuing basis. *Id.*

Plaintiff testified he: (1) cannot lift 75 pounds; (2) is unable to be on his feet for six hours a day; (3) needs to take breaks every 15 minutes; (4) is limited to standing 20 minutes; (5) is limited to walking three to four blocks; and (6) needs a nap after lunch. AR 49-52.

The ALJ cited to plaintiff's ability to ride his bike for 30 minutes at a time, and that he can move loads of laundry, clean dishes and perform light dusting. AR 32 (citing AR 594). The ALJ found that these activities contradict plaintiff's testimony of having no energy or stamina to perform tasks, which eroded his credibility. AR 32 (citing AR 198-202).

However, the daily activities described by plaintiff do not controvert his testimony. Doing laundry, dishes and dusting are activities that would reasonably be possible for a person whose limitations include: (1) is unable to be on his feet for six hours a day; (2) needs to take breaks every 15 minutes; (3) is limited to standing 20 minutes; (4) is limited to walking three to four blocks; and (5) needs a nap after lunch.[2] AR 49-52. *See Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can

---

[2] To the extent plaintiff also testified that that he cannot lift more than 75 pounds, there is no evidence in the record regarding whether plaintiff would be required to lift a certain weight when doing housework or loads of laundry. Thus, it is not clear whether this testimony would contradict the ALJ's finding that plaintiff's daily activities were inconsistent with his allegations.

ORDER - 14

support an adverse credibility determination. But here, as described, the daily activities, which included completing basic chores, sometimes with the help of a friend, and attending occasional social events, do not contradict Ghanim's testimony").

In addition, one report that plaintiff is able to get some exercise by riding his bike for 30 minutes is not enough to discount plaintiff's testimony. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) (The ALJ's decision cannot be affirmed "simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted)). In the same report, plaintiff stated he does not exercise vigorously. AR 594. Thus, the evidence is not clear regarding the speed or activity level at which plaintiff rode his bike. *Id.* There is no indication that plaintiff was able to sustain the sort of bicycling that might indicate his health was substantially improving or that he could perform sustained bicycling or some other vigorous exercise as part of a job requirement. The ALJ's findings therefore were not sufficiently specific or clear to discount plaintiff's testimony. *See Burrell*, 775 F.3d 1138; *Brown-Hunter*, 806 F.3d at 489 ("[W]e require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons supported by evidence in the record, to support that credibility determination.")

In addition, the fact that plaintiff was able to perform some limited basic activities does not undermine his testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to

ORDER - 15

periodically rest or take medication."). Finally, none of these rather limited, primarily in-home activities, cited by the ALJ establish that plaintiff could perform basic work activities on a regular and continuing basis in a work setting. There is no evidence that plaintiff spent a substantial part of his day performing any of these activities or that the level at which he performed them is transferable to the work setting. *Cf. Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (Daily activities may also be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). Therefore, this is not a valid reason to find plaintiff lacks credibility.

      c. <u>Objective Evidence</u>

The Court has determined the ALJ's first two reasons for discounting plaintiff's subjective symptom testimony are improper. The only remaining reason for discounting plaintiff's complaints is because the complaints are inconsistent with the objective evidence. The objective evidence is ambiguous in this case, because there is clinical medical evidence of stroke, and heart valve surgery with symptoms starting September 8, 2010, and then a variety of medical assessments between the two surgeries and after the second surgery. The ALJ's decision rests heavily on evidence from 2013-15, while not fully addressing the earlier evidence concerning Mr. Rycroft's two surgeries and the rehabilitation evaluations of various doctors during 2010, 2011, and 2012. AR 33-35. Whether Mr. Rycroft was continuously disabled and had limitations that prevented him from working for any continuous 12-months during that period is not addressed by the ALJ.

Determining a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter*, 166 F.3d at 1297; *see also Fisher v.*

ORDER - 16

*Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011). However, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

As this is the sole remaining reason and since a claimant's testimony may not be rejected solely on basis of inconsistency with the objective evidence, the Court finds the ALJ has not provided legally sufficient reasons for discounting plaintiff's subjective symptom testimony. Accordingly, the ALJ erred.

  d. <u>Harmless Error</u>

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Plaintiff testified to greater limitations than the limitations included in the RFC determination. Plaintiff testified that he is unable to be on his feet for six hours a day, needs to take breaks every 15 minutes, is limited to standing 20 minutes and to walking three to four

ORDER - 17

blocks, and needs a nap after lunch. AR 49-52. In contrast, the RFC limited plaintiff to sitting and standing/walking for six hours each out of an eight-hour day and lifting/carrying 50 pounds occasionally and 25 pounds frequently. AR 32-33. Had the ALJ properly considered plaintiff's subjective symptom testimony, he may have included additional limitations in the RFC. As the ultimate disability determination may have changed, the ALJ's error is not harmless and requires reversal.

## III. Remand for Further Administrative Proceedings

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.2d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, No. 15-15277, slip. op. at 7 (9th Cir. Nov. 7, 2017). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels v. Berryhill*, No. 15-16477, slip op. at 37 (9th Cir. Oct. 26, 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only "where '(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Trevizo*, 871 F.2d at 682-83 (quoting *Garrison v, Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit has recently applied the "credit-as-true" rule by first asking: Were the

ORDER - 18

ALJ's reasons for rejecting the evidence legally insufficient? *Leon*, slip op. at 6-7. Then, having answered that question in the affirmative, the Court considered the second step in the analysis: Are there remaining issues that must resolved before a disability determination can be made, and would further administrative proceedings be useful? *Id.* The Court confirmed that the third step would result in an award of benefits only if the questions at parts one and two of the analysis are answered yes – and crediting the improperly discredited evidence as true, further proceedings would appear to be unnecessary.

The Court in *Leon* held, even where the district court finds in the first part of the analysis that the ALJ has failed to offer sufficient reasons for rejecting evidence, and also finds in the second part of the analysis that there is "a fully developed record without any conflicts, gaps, or ambiguities," and finally reaches the third part of the analysis and credits the rejected evidence as true – it is still within the court's discretion whether to remand for further proceedings, or to remand for award of benefits. *Leon,* slip op. at 10-11. If, considering the record as a whole, there are reasons for the district court to have serious doubt as to whether the claimant is disabled – the district court retains discretion to remand to the agency for additional proceedings. *Id.* at 12; *Revels,* slip op. at 39.

As discussed above, the ALJ did not err in discounting the October 2012 and March 2013 medical opinion evidence of Dr. Trivax, insofar as the ALJ was considering the medical evidence of disability that is dated within the time span of October 2012 forward. However, the ALJ failed to provide legally sufficient reasons for discounting plaintiff's credibility concerning his subjective complaints and issues still remain as to the duration, nature and extent of plaintiff's functional limitations. Accordingly, ambiguities in the record, gaps in the evidence, and serious doubt remains as to whether plaintiff is in fact disabled, and therefore remand for

ORDER - 19

further consideration of those issues is warranted. On remand, the Court instructs the ALJ to consider all evidence during the relevant period beginning September 8, 2010, including the medical evidence and plaintiff's complaints.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred in determining that plaintiff was not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 1st day of December, 2017.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER - 20